**Donald D. duBoulay**  
  Attorney at Law

**305 Broadway, Suite 602**  
New York, NY 10007

Telephone: (212) 966-3970  
Fax:         (212) 941-7108  
E-mail:     dondubesq@aol.com

April 14, 2026

The Honorable Margo K. Broadie  
Chief Judge, United States District Court  
Eastern District of New York  
225 Cadman Plaza East  
Brooklyn, New York 11201

Re: United States v. Eliahou Paldiel  
       24 Cr. 329 (MKB)

Dear Judge Brodie:

This memorandum is respectfully submitted on behalf of Eliahou Paldiel who will appear before you for sentencing on April 28, 2026. For the reasons noted below, we respectfully submit that a sentence of Probation, coupled with the already exacted penalty of forfeiture would satisfy the goals of sentencing in this case

The abiding question a sentient Court confronts when tasked with imposing a 'just sentence' upon the accused, often is; who is this person that stands before me for sentencing? Is he the purposeful, possibly devious malefactor reflected by the offense for which he is convicted? and deserves to be rehabilitated by a term of incarceration? Or are the facts and circumstances of this case and the defendant such that they inform a more reasoned sentence, reflecting the harm caused, and yet providing a way forward for the defendant to construct a meaningful life after his sentence. It is respectfully submitted upon review of the circumstances in this matter; it will be apparent that Mr. Paldiel is not a malevolent actor and not likely to repeat the offense that he is convicted of and is deserving of a sentence of probation.

The Offense

The offense for which Eliahou is convicted was borne out of an attempt to address the frustrations of the majority of rideshare drivers in New York and New Jersey who are denied the ability to determine whether to accept or refuse a particular fare. Drivers want to know the location of the fare destination and the fare, before accepting the call so that they can make an informed decision whether to accept the proposed fare. Uber hid that information from the drivers until the

driver blindly accepted the ride request. Although the electronic metadata message Uber sent to the sharedrivers phones notifying them of a putative fare contained the address destination and fare, Uber did not unlock the transmission until the driver accepted. The demand for this information by the drivers was palpable. Enter the defendants who recognized an opportunity to uncover the truthful hidden information and provide that service to rideshare drivers for a fee.  The idea was to meet the demands of the driving community. Hence Screwber was born. The motivation for the services provided did not originate as an intention to steal money from Uber. The fake GPS application which was downloaded to the rideshare drivers phone was freely available to the public on open sources and for a fee were installed on drivers' phones. In fact, the defendant's App did not involve any intrusion or trespass on Uber's servers, it merely unlocked the metadata that Uber already communicated to prospective drivers on their phones, allowing drivers to access information on their phones to make an informed decision whether to accept a particular fare.

The screwber application was the primary service requested by the rideshare drivers, and that service drove the sales of the Apps to the drivers. Although the fake GPS application was also provided to the drivers, the original and primary purpose of that App was to allow drivers to queue at the airports without being present. The drivers using this "spoofing" service secured a place in line and as their place in the line moved forward, drove to the airport to obtain the fare. In a ruling on a motion to dismiss Judge Ross determined that using the Screwber application to queue at airports was not a criminal offense (Dkt. 48, p.31-32).

Inevitably a subset of drivers began to exploit the GPS location service and spoofed themselves in areas other than the airport, thus enabling the fraudulent capture of "surge" fees. Mr. Paldiel became aware of this activity and continued to provide service to these drivers and for that reason he accepts responsibility, although he later pointedly advised against that activity.

<u>Personal History and Characteristics</u>

Eliahou Paldiel is 53 years old. He was born in Israel to American citizens and initially came to the United States when he was less than a year-old. He subsequently returned to Israel, completed High School and completed his compulsory military service. Thereafter he returned to the United States and was variously employed as a security officer for Tower Air for several years, was engaged in the real estate business for a period and was employed by the transportation Security Administration (TSA) for ten years. Eliahou tried his hand at business, managing a small food store in Baltimore, that presented an opportunity to eventually branch off with his own store. The business failed and Eliahou returned to metropolitan area, where he obtained employment as a Uber

driver, and learned about "Fake GPS", an App in common use among the rideshare drivers.

### The Presentence report

Mr. Paldiel objects to the assessment of a 4 point upward adjustment for a leadership role per U.S.S.G §3B1.1 (a). PSR ¶ 42. Mr. Paldiel did not organize or lead any persons in a plan to defraud UBER. No discussions or implicit agreement of this sort existed or can be implied by the facts of this offense. Paldiel simply provided the services of Apps, which had dual purposes. The first use was primarily for unlocking the hidden information received on rideshare drivers phone indicating the destination and fare of rides, which does not involve criminal liability, and secondarily, "Fake GPS" which was purposed to Queue in airports. The fact that a small minority of drivers abused the Fake GPS to obtain fraudulent "surge" payments in no way equates to positing Mr. Paldiel as a leader of that group. Mr. Paldiel did not exercise control over any driver, did not have decision-making authority over any driver. Nor did he receive any of the monies from the drivers who perpetrated the fraud.

Since Mr. Paldiel does not merit a leadership enhancement. He qualifies for a 2 level base offense reduction per U.S.S.G.4C1.1, resulting in a Total Offense level of 18 and with a criminal History category of I, resulting in an advisory guideline range of 27-33 months.

### The 18 U.S.C.  3553 (a) (2) Factors

In imposing a sentence, the court is tasked with considering the defendant's whole life (18 USC §3553 (a)) and not only the offense behavior that occasions his appearance on the day of sentencing. In selecting a sentence, the court takes as its "lodestar the parsimony clause of 18 U.S.C. 3553 (a)" *United States v. Douglas*, 713 F.3d 694, 700 (2d. 2013). That provision directs sentencing courts to "impose a sentence sufficient, but not greater than necessary, to comply with the factors set out in U.S.C. § 3553(a)(2)," i.e., "proportionality, deterrence, incapacitation, and rehabilitation." The sentence requested, a term of probation, would be consistent with the parsimony clause instruction to impose the least restrictive sentence to fulfill the objectives of sentencing.

Noteworthy, is that18 U.S.C. §3582 (a) instructs that "The court in determining whether to impose a term of imprisonment…shall consider the factors set forth in 3553 (a)…*recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation.*" (emphasis added) The clear implication is that incarceration should not be the overriding consideration or even the first consideration when imposing a sentence.

The four prongs that reflect the goals of sentencing policy are instructive here. There can hardly be an argument that Eliahou Paldiel needs to be incapacitated thus jailed, he is not an ongoing threat to society, nor does he require rehabilitation or deterrence. Mr. Paldiel's entire life savings has been confiscated by the Government; he is penniless and must begin life anew. He is living on the largess of his parents. And he is in the process of applying for Commercial Driver's License so that he may earn a living in the near future.

In sum, the sentencing factors that the court is tasked to consider at sentencing weigh heavily against incarceration, and in mightily in favor of allowing Eliahou to continue his path to a meaningful and future.

Conclusion

The decision a court makes when sentencing an inmate is a difficult one. The court must consider many factors; rehabilitation, just punishment, the circumstances which led a person to his actions and the victim's interest. It is respectfully requested that the court temper justice with mercy and grace and sentence Mr. Paldiel a term of probation.

**"It is our duty to see that the force of the state, when it is brought to bear through the sentences of our courts, is exerted with the maximum we can muster of rational thought, humanity and compassion."**

**USDJ Marvin E. Frankel,** *Federal Criminal Sentences: Law Without Order*, **Federal Sentencing Reporter, Vol.14 No. 5 pp 319-321 (1973)**

Respectfully submitted,

_____/s/_____
Donald duBoulay, Esq
Counsel for Eliahou Paldiel
305 Broadway, Suite 602
New York, New York 10007
(212) 966-3970

cc: All counsel of record (via ECF)